UNITED STATES DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                       :
MAMUN WASIM,                                           :
                                                       :
                      Plaintiff,                       :
                                                       :          **OPINION AND ORDER**
           - against -                                 :
                                                       :          **10 Civ. 0095 (SAS)**
SUMMIT SECURITY SERVICES,  INC. :
                                                       :
                      Defendant.                       :
------------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Mamun Wasim, proceeding pro se, brings this action against Summit
Security Services, Inc. ("Defendant" or "Summit") alleging religious
discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title
VII").[1] Wasim asserts that he suffered harassment amounting to a hostile work
environment.[2] Defendant now moves for summary judgment on the following
grounds:  (1) Plaintiff's allegations of harassment are insufficient to support a

---

[1]    *See* Complaint for Employment Discrimination ("Compl.") at 1-3.

[2]    Plaintiff does not assert a disparate treatment claim, and the facts at
hand do not indicate any adverse changes in his employment status or in the terms
and conditions of his employment. *See Kessler v. Westchester County Dep't of
Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006).  Therefore, even if this court
construed Plaintiff's complaint to contain an allegation of disparate treatment,
there is insufficient evidence to support such a claim.

hostile work environment claim; (2) Plaintiff cannot "raise an issue of fact

concerning whether any of the [alleged] incidents occurred because of his

religion;" and (3) there is no basis to impute the actions of Plaintiff's co-workers to

Summit.[3]  For the reasons stated below, Summit's motion for summary judgment is

granted.

## II.    BACKGROUND

Summit is a security service provider headquartered in Uniondale,

New York.[4]  In February 2006, Wasim, a Muslim male, was employed by Summit

as a full-time security officer.[5]  From February to July 2006, Plaintiff was assigned

to work at an outdoor parking lot in Queens, New York.[6]  He was transferred to a

position at the Long Island Rail Road ("LIRR") Hillside Facility in Queens in July

2006.[7]  The transfer resulted in more desirable working conditions, a better

---

[3]     Memorandum in Support of Defendant's Motion for Summary
Judgment ("Def. Mem.") at 2-3.

[4]     *See* Defendant's Statement Pursuant to Local Rule 56.1 ("Def. 56.1")
at ¶ 1.

[5]     *See id* at ¶ 4.

[6]     *See id.* at ¶ 5.

[7]     *See id.* at ¶ 7.

schedule, and a pay increase.[8]  Plaintiff was initially assigned to work a 2:30 p.m.

to 10:30 p.m. shift on Fridays, due to his request not to work from 1:00 p.m. to

2:00 p.m. on Fridays.[9]  However, by October 2006, "Summit was able to adjust the

Hillside Facility schedule to allow Plaintiff to have Fridays off entirely."[10]

Defendant has a record of accommodating its employees' religious beliefs,

including allowing a Muslim employee to use the lunchroom for daily prayers.[11]

Summit's employees are religiously diverse, consisting in part of Christians,

Hindus, and at least two other Muslims.[12]

        In September 2007, Wasim found on the desk of his work booth a

newspaper clipping, marked with his initials, that featured suggestive images of

women.[13]  Plaintiff discussed this incident with his supervisor, Jorge Morerro, and

---

[8]       *See id.* at ¶ 8.  Plaintiff disputes that the transfer resulted in more
desirable working conditions and a better schedule but admits that he received a
raise.  *See* Affirmation in Opposition to Defendant's Motion for Summary
Judgment ("Pl. 56.1") at ¶ 8.

[9]       *See* Def. 56.1 at ¶ 9.  It is undisputed that Plaintiff requested not to
work from 1:00 p.m. to 2:00 p.m. on Fridays, but Plaintiff asserts that he did not
mention his religious motive when making the request. *See* Pl. 56.1 at ¶ 9.

[10]      Def. 56.1 at ¶ 10.

[11]      *See id.* at ¶ 13.

[12]      *See id.* at ¶ 12.

[13]      *See* Pl. 56.1 at ¶ 99.  Defendant does not dispute this additional
material fact raised by Plaintiff but asserts that this incident was not included in the

with Joselyn Henry, the co-worker he believed was responsible.[14]  To Wasim's

knowledge, no disciplinary action was taken against Henry for his conduct.[15]  On

July 8, 2008, Plaintiff found a drawing of, what he presumed to be, a Muslim

terrorist on the door of his work booth.[16]  He erased the sketch without reporting

the incident to any of his supervisors.[17]  The following day, Wasim found an

"almost identical" drawing in the same location.[18]  Plaintiff brought this incident to

the attention of Morerro, and a report was made to Robert Calabrese, Summit's

Client Services Manager and Morerro's direct supervisor.[19]  Calabrese determined

that Henry was responsible for the drawing.[20]  Henry claimed that the drawing was

not meant to offend anyone.[21]  In late July 2008, Plaintiff found a sketch of a skull

---

Complaint and does not "objectively evidence harassment because of [Plaintiff's] religion."  Def. Mem. at 4.

[14]     *See* Pl. 56.1 at ¶ 101.

[15]     *See id.* at ¶ 102.

[16]     *See* Def. 56.1 at ¶¶ 14-16.

[17]     *See id.* at ¶ 18.  Plaintiff claims that he showed the sketch to the Fire Safety Director, Lionel Steele.  *See* Pl. 56.1 at ¶ 18.

[18]     *See* Def. 56.1 at ¶ 19.

[19]     *See id.* at ¶¶ 22-23.

[20]     *See id.* at ¶ 24.

[21]     *See id.* at ¶ 25.

4

and crossbones on the door of his work booth.[22] "[He] did not immediately report this incident to anyone at Summit, but at some point discussed it with Morerro."[23]

On September 18, 2008, Wasim discovered another image of, what he presumed to be, a Muslim terrorist drawn on the back of a LIRR sign-in sheet which was left in the drawer of the security booth desk.[24] He did not report this incident to any supervisor at Summit.[25]

On March 10, 2009, Wasim found the following message written on the wall of the security booth: "The World Love[s] Jews Do You?"[26] Plaintiff took a picture of the writing with his camera phone, but "delayed reporting [the incident] to Morerro for two weeks.[27] Morerro informed Calabrese, but he was unable to determine who was responsible after he conducted an investigation.[28]

---

[22]     See id. at ¶ 26.

[23]     Id. at ¶ 30.

[24]     See id. at ¶ 36.

[25]     See id. at ¶ 42. Although Plaintiff admits that he did not report this incident to Summit, he claims that he did alert the LIRR Diversity Department. See Pl. 56.1 at ¶ 42.

[26]     Def. 56.1 at ¶ 43.

[27]     Id. at ¶ 48. Plaintiff asserts that he reported the incident to Morerro within two weeks. See Pl. 56.1 at ¶ 48.

[28]     See Def. 56.1 at ¶¶ 49-50.

5

Calabrese directed Morerro to erase the message.[29]

On December 14, 2009, when Wasim relieved Noel Chambers of his post, Chambers called Plaintiff a terrorist in front of a LIRR employee.[30] Summit then informed Chambers that he would be transferred from the Hillside Facility as a result of his conduct.[31] Rather than accept the transfer, Chambers resigned.[32] Throughout December 2009, Wasim found religious literature and Christmas "sprinkles" within his work booth.[33] He reported this to Calabrese.[34]

On January 17, 2010, Plaintiff discovered a drawing of an African-American man's face on the security booth desk.[35] He reported the incident to Summit's Human Resources Manager.[36]

---

[29]   *See id.* at ¶ 49.  Plaintiff claims that the message was removed from the wall approximately nine months later, after a picture of the Star of David was drawn above the writing.  *See* Pl. 56.1 at ¶ 49.

[30]   *See* Def. 56.1 at ¶ 53.

[31]   *See id.* at ¶ 56.

[32]   *See id.* at ¶ 57.

[33]   *Id.* at ¶¶ 59-60.  Wasim asserts that he found "Christmas decorations, like sprinkles" and "what you use for a Christmas tree" in the work booth.  Pl. 56.1 at ¶ 60.

[34]   *See* Def. 56.1 at ¶ 61.

[35]   *See id.* at ¶ 62.

[36]   *See id.* at ¶ 64.

On June 9, 2010, Plaintiff found a drawing of a face on a clipboard in the security booth.[37]  He reported the incident to Morerro, who in turn reported the incident to Calabrese.[38]  Summit concluded that the drawing was merely a doodle and not directed at Plaintiff.[39]

On August 8, 2010, Wasim discovered a picture of a face drawn on a post-it, pasted on the top of his locker.[40]  He reported the incident to a shift supervisor who reported the incident to Calabrese.[41]  "Calabrese investigated the matter and determined that it did not warrant further investigation or any disciplinary action."[42]  There have been no incidents that Plaintiff believes show religious discrimination since August 2010.[43]

Plaintiff is presently employed by Summit.  He filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2008.[44]

---

[37]    *See id.* at ¶ 68.

[38]    *See id.* at ¶ 71.

[39]    *See id.* at ¶ 74.

[40]    *See id.* at ¶ 77.

[41]    *See id.* at ¶ 82.

[42]    *Id.* at ¶ 83.

[43]    *See* Pl. 56.1 at ¶ 84.

[44]    *See* Compl. at 3.

He received a Notice of Right to Sue Letter from the EEOC on September 4, 2009.[45]  On January 7, 2010, Wasim filed the instant action.  Defendant moved for summary judgment on December 29, 2010.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[46]  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"[47]  "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[48]  In turn, to defeat a motion for summary

---

[45]     *See id.* at 4.

[46]     Fed. R. Civ. P. 56(c).

[47]     *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[48]     *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).  *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

8

judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[49] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[50] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[51]  However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[52]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving

---

[49]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*, 500 F. Supp. 2d 356, 361 (S.D.N.Y. 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks and citations omitted).

[50]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[51]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[52]     *Kessler*, 461 F.3d at 206 (quoting *Anderson*, 477 U.S. at 248-49).

9

party and draw all reasonable inferences" in that party's favor.[53]  However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[54]  Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[55]  A court will hold the submissions of a pro se party "'to less stringent standards than formal pleadings drafted by lawyers . . . .'"[56]  District courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"[57]  These same principles apply to briefs and opposition papers submitted by pro se litigants.[58]  Nonetheless, proceeding pro se "does not otherwise relieve a litigant from the

---

[53]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[54]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

[55]     *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[56]     *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

[57]     *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[58]     *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003); *Burgos*, 14 F.3d at 790.

10

usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."[59]

## B.   Summary Judgment and Employment Discrimination

"'[T]he salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation.'"[60] "Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . . plaintiff has offered little or no evidence of discrimination."[61]  Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'"[62]  However, greater caution must be exercised in granting summary judgment in employment discrimination cases where the employer's intent is genuinely at issue and circumstantial evidence may reveal an

---

[59]     *Cole v. Artuz*, No. 93 Civ. 5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

[60]     *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

[61]     *Alphonse v. State of Connecticut Dep't of Admin. Servs.*, No. Civ.3:02CV1195, 2004 WL 904076, at *7 (D. Conn. Apr. 21, 2004) (internal quotation marks and citation omitted).

[62]     *Feingold v. New* York, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson*, 239 F.3d at 466) (alteration in original).

11

inference of discrimination.[63] This is so because "'[e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law.'"[64] But "'[e]ven in the discrimination context, a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment.'"[65] "'[M]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment.'"[66]

## IV. APPLICABLE LAW

An employee seeking to bring a hostile work environment claim must demonstrate the following: (1) he is a member of a protected class; (2) he suffered unwelcome harassment; (3) he was harassed *because of his membership in a*

---

[63]     *See id.*

[64]     *Sadki v. SUNY Coll. at Brockport*, 310 F. Supp. 2d 506, 515 (W.D.N.Y. 2004) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) (internal quotation marks and citation omitted, brackets in original)).

[65]     *Flakowicz v. Raffi Custom Photo Lab, Inc.*, No. 02 Civ. 9558, 2004 WL 2049220, at *8 (S.D.N.Y. Sept. 13, 2004) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

[66]     *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (alteration in original)). *Accord Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("'[P]urely conclusory allegations of discrimination, absent any concrete particulars,' are insufficient" to satisfy an employee's burden on a motion for summary judgment.) (quoting *Meiri*, 759 F.2d at 998) (alteration in original).

12

*protected class*; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment.[67]  The standard for a hostile work environment is "demanding," and the plaintiff must prove that the conduct was "offensive, pervasive, and continuous enough to amount to a constructive discharge."[68]

Evaluating a hostile environment involves reviewing the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[69] The question is whether a reasonable person would have found the environment to be hostile and if the plaintiff perceived it as such.[70]  Isolated acts, unless serious, ordinarily do not meet the threshold of pervasiveness.[71]  Furthermore, a hostile work environment claim requires a showing that "a specific basis exists for

---

[67]     *See Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008).

[68]     *Scott v. Memorial Sloan-Kettering Cancer Ctr.,* 190 F. Supp. 2d 590, 599 (S.D.N.Y. 2002).

[69]     *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

[70]     *See Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 318 (2d Cir. 1999).

[71]     *See id.*

imputing the conduct that created the hostile environment to the employer."[72] "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'"[73]

## V.   DISCUSSION

In support of his hostile work environment claim, Wasim references a wide range of workplace incidents throughout the past three years of his employment. The incidents involving the newspaper clipping of women posing provocatively and the drawings of a skull and crossbones, an African-American face, and unidentifiable faces, may constitute harassment. However, Wasim offers no evidence in support of his assertion that the drawing of the skull and crossbones was a death threat motivated by his religion,[74] or that the other sketches were directed at Plaintiff due to his Muslim faith. In fact, Plaintiff struggles to explain

---

[72]     *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997).

[73]     *Id.* (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994)).

[74]     Summit's investigation revealed that Henry was responsible for the sketch of the skull and crossbones. Henry denied that it was directed at Plaintiff or that it was intended to have any religious or anti-Islamic connotations. He was verbally disciplined and told that he is not permitted to draw or write on LIRR property. *See* Robert Calabrese's Declaration in Support of Defendant's Motion for Summary Judgment ("Calabrese Decl.") at 4.

14

why any of the drawings are discriminatory.[75]  Furthermore, although the

newspaper clipping was addressed to Wasim, there is no evidence suggesting that

Plaintiff's religion even partially motivated the perpetrator.  Consequently, there is

no basis for this Court to infer that any of these incidents occurred due to

Plaintiff's membership in a protected class other than his subjective speculation.

Because Plaintiff cannot show that these incidents have anything to do with his

religious beliefs, they cannot form the basis of his hostile work environment claim.

           Plaintiff also asserts that he found religious literature, a discriminatory

message, and a drawing of what appears to be a Muslim man[76] within his

workspace on different occasions.[77]  When Plaintiff found religious literature and

Christmas decorations around his work booth in December 2009 and filed a report,

Summit inspected the booth and removed the items.  In response to Wasim's

complaint that there was a discriminatory message on the wall of his work booth

and that there was a drawing of a Muslim man on the door of the work booth,

Summit directed Morerro to remove the graffiti and conducted an investigation to

---

[75]     Referring to the drawing of a face found on his locker, Plaintiff states
that it is offensive due to "the glaring eyes" and "the mustache."  Deposition of
Mamun Wasim, Ex. E to Notice of Motion, at 178.

[76]     Plaintiff says that the sketch depicts a "well-known Muslim terrorist."
Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for
Summary Judgment at 4.

[77]     *See* Def. 56.1 at ¶¶ 14, 43, 59.

determine who was responsible.  Henry "admitted drawing the figure, but added that it was not meant to offend anyone."[78]  While Defendant was not successful in determining who wrote "The World Love[s] Jews Do You?" on the wall, it determined that the message was not directed at Wasim.  Due to the lack of evidence that the message was directed at Wasim and the fact that the work booth is used by a number of non-Jewish employees, Wasim cannot establish that he was the target of the harassment.  There is no evidence indicating that either the religious literature or the message on the wall were directed at Plaintiff.  Furthermore, the fact that Plaintiff waited to report the message written on the wall to Summit begs the question of whether this act, standing alone, was sufficiently severe or pervasive to be actionable under Title VII.[79]

Plaintiff does not allege that a superior was responsible for any of the aforementioned incidents.  In fact, he claims that his co-workers were at fault.  As a result of Plaintiff's complaints, Summit instructed Morerro "to monitor the security booth on a daily basis and remove any non-work related items, drawings, and materials.  This practice continues to date."[80]  Because Summit provided a

---

[78]    Calabrese Decl. at 3.

[79]    *See Scott,* 190 F. Supp. 2d at 599.

[80]    Calabrese Decl. at 4.

16

reasonable avenue of complaint and took action once informed of the harassment, it cannot be held liable.

Lastly, Plaintiff claims that he found a small drawing of a Muslim man on the back of a sign-in sheet inside the desk and that he was called a terrorist by a co-worker.[81]  Wasim did not report the drawing to Summit, but he reported Chambers' derogatory comment.  Chambers was informed that he would be transferred from the Hillside Facility to another location for calling Wasim a terrorist.  Consequently, Summit cannot be held liable for these incidents.  There is no evidence that Summit orchestrated, acquiesced in, condoned, or encouraged the harassment.  When notified of its employee's inappropriate conduct, Summit enforced its anti-discrimination policy by disciplining the perpetrator.  Accordingly, none of these allegations support Plaintiff's hostile work environment claim.

## VI.   CONCLUSION

For the foregoing reasons, Summit's motion for summary judgment is granted.  The Clerk of the Court is directed to close the instant motion [docket # 19 and # 25] and this case.

---

[81]     *See* Def. 56.1 at ¶¶ 36, 53.

17

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             April 4, 2011

**-Appearances-**

**Plaintiff (Pro Se):**

Mamun Wasim
179-01 Selover Road
Jamaica, NY 11434
(209) 242-6020

**For Defendant:**

Kevin P. Mulry, Esq.
Heather P. Harrison, Esq.
Farrell Fritz, P.C.
1320 Reckson Plaza
Uniondale, NY 11556
(516) 227-0700